FILED - USDC - FLMD - ORL
JUL 29 2026 AM11:43

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

**ORLANDO DIVISION**

RENEE RUSSELL (formerly Renee Perez), Plaintiff,

vs.

PENNYMAC LOAN SERVICES, LLC, aka PRIVATE NATIONAL MORTGAGE ACCEPTANCE COMPANY, LLC, Defendant.

(Initial Filing -- Jury Trial Demanded on Counts IV, VI, VII, and VIII)

Case No. [TO BE ASSIGNED] 6:26-cv-1650-JSS-DCI

# COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

COMES NOW Plaintiff Renee Russell, appearing pro se, and files this initial Complaint for Damages and Equitable Relief against Defendant PennyMac Loan Services, LLC. Plaintiff presents all eight counts for active adjudication. To the extent certain counts are subject to Defendant's Mutual Arbitration Policy, Plaintiff files this Complaint now to preserve her federal statutory rights and 90-day EEOC right-to-sue window. Plaintiff brings to this Court's attention serious and ongoing misconduct by Defendant's legal representatives that bears directly on the integrity of these proceedings and on the appropriateness of arbitration as the exclusive forum for any of Plaintiff's claims.

## RESERVATION OF THIRD-PARTY RIGHTS

Nothing in this Complaint waives, extinguishes, or precludes Plaintiff's independent rights and active administrative proceedings against third-party insurance carriers, including Chubb, regarding workers' compensation indemnity, medical coverage, or private disability benefits. All such rights are expressly reserved. Plaintiff further expressly reserves all rights to pursue future lawsuits against any and all third parties, including but not limited to Chubb and its representatives, arising from the bad-faith conduct, medical interference, improper direct contact, unlicensed adjuster activity, and other tortious acts described herein. Nothing in this Complaint, and no stay or arbitration order issued in connection with this Complaint, shall be construed to bar, limit, or extinguish any such future third-party claim.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 29 U.S.C. § 1132 (ERISA), 29 U.S.C. § 2617 (FMLA), 42 U.S.C. § 12117 (ADA), 42 U.S.C. § 2000e-5 (Title VII), and 29 U.S.C. § 216(b) (FLSA).

2. Plaintiff timely filed charges with the U.S. Equal Employment Opportunity Commission under Charge No. 510-2026-02800 per Exhibit 5. The EEOC issued a

formal Notice of Right to Sue dated June 23, 2026 per Exhibit 6. This Complaint is filed within 90 days of Plaintiff's receipt of that Notice and is therefore timely.

3. Venue is proper in the Orlando Division pursuant to 28 U.S.C. § 1391(b). All events giving rise to this action occurred in Osceola County, Florida, where Plaintiff resides and performed remote work as a Senior DE Mortgage Underwriter.

## PARTIES

4. Plaintiff Renee Russell (formerly Renee Perez) is an individual residing at 6929 Five Oaks Drive, Harmony, Osceola County, Florida 34773. Phone: 407-752-4178. Email: Mrsrussell1970@gmail.com.

5. Defendant PennyMac Loan Services, LLC, also known as Private National Mortgage Acceptance Company, LLC, is a foreign limited liability company doing business in Florida. Its registered agent for service of process is C T Corporation System, 1200 South Pine Island Road, Suite 250, Plantation, FL 33324.

## NOTICE TO THE COURT: OPPOSING COUNSEL MISCONDUCT, UNAUTHORIZED PRACTICE OF LAW, AND ARBITRATION DELAY

6. Plaintiff brings the following matters to this Court's attention at the outset because the conduct of Defendant's counsel, Troutman Pepper Locke, has directly impaired Plaintiff's ability to exercise her federal statutory rights, has tainted the parallel AAA arbitration proceeding, and constitutes an independent basis for all claims proceeding before this Court:

- On January 9, 2026, out-of-state attorneys from Troutman Pepper Locke, specifically Paul Nason and Aaron Nava, issued a cease-and-desist communication to Plaintiff per Exhibit 7. At that time, and for months thereafter, none of these attorneys held a Florida Bar license. No pro hac vice application had been filed in any court or forum.

- From January through June 2026, these same unlicensed, out-of-state attorneys continuously engaged in substantive legal communications in Florida, including issuing demands, providing false employment information, improperly asserting themselves as registered agent for PennyMac in federal correspondence (a false statement, as public records confirm the lawful registered agent is C T Corporation System), and attempting to assert authority over Plaintiff's 401(k) disbursement and her active Florida Workers' Compensation claims by citing the arbitration agreement, despite those matters being expressly excluded from the MAP's scope.

- All of the foregoing occurred while Plaintiff was recovering from open carpal tunnel decompression surgery performed on September 17, 2025 per Exhibit 9, and while Plaintiff had an active EEOC charge on file. Defendant's unlicensed counsel engaged in this conduct against an unrepresented pro se party with no legal representation to shield her.

- In March 2026, Plaintiff filed a formal Unauthorized Practice of Law (UPL) complaint with the Florida Bar against these attorneys. Plaintiff has also pursued all available remedies in the applicable jurisdictions, including formal ethics complaints against the attorneys identified herein, and respectfully requests that this Court exercise its own independent authority to address counsel's conduct in connection with these proceedings. At the time of the Florida Bar filing, no Florida-licensed counsel of record existed for Defendant in any Florida forum.

- On June 15, 2026, a Florida-barred attorney from the same firm finally appeared, more than five months after the unlicensed attorneys first initiated substantive legal communications in Florida. The out-of-state attorneys did not file a notice of appearance in the AAA arbitration with a Florida Bar credential until July 9, 2026, more than six months after first initiating adverse legal action against Plaintiff.

- PennyMac in-house counsel LeAllen Frost was copied on Plaintiff's EEOC charge filing and had actual knowledge of the unauthorized practice of law being conducted by Troutman Pepper Locke attorneys. Despite this knowledge, PennyMac took no corrective action for over six months.

7. ARBITRATION DELAY: As of the date of this Complaint, the AAA arbitrator in Case No. 01-26-0003-0556 has still not been appointed. Defendant has engaged in a pattern of delay throughout the arbitration process that has prevented any neutral resolution from occurring in the forum Defendant itself demanded. Specifically:

- Defendant paid the mandatory AAA arbitration filing fee late, causing an initial delay in the commencement of proceedings that Plaintiff had no control over and could not cure.

- Defendant waited until the last possible moment to file its Answer and Affirmative Defenses in the arbitration, further extending the timeline and prejudicing Plaintiff's ability to move the proceedings forward.

- Defendant has failed to participate in the arbitrator selection process in a timely manner. As of the date of this filing, the arbitrator has still not been appointed, and

Defendant's dilatory participation in the selection process is a direct cause of that ongoing delay.

Plaintiff has been unable to obtain any neutral resolution through the arbitration forum that Defendant compelled her to use. The very party that demanded arbitration, cited the MAP to strip Plaintiff of her right to a jury trial, and asserted attorneys' fees against her in that same forum has now systematically delayed every stage of the process. This conduct is not consistent with good-faith participation in arbitration. It constitutes an additional and independent basis for this Court to retain active jurisdiction over all eight counts without a stay, and for the Court to decline to defer to a forum that Defendant has used as a delay mechanism rather than a dispute resolution vehicle.

## THRESHOLD CHALLENGE TO ARBITRATION AGREEMENT ENFORCEABILITY

8. Plaintiff further raises a threshold challenge to the enforceability of Defendant's Mutual Arbitration Policy (MAP). Key facts supporting this challenge include:

- Plaintiff was first presented with an arbitration agreement at the commencement of her employment in December 2019 per Exhibit 1.

- In March 2023 per Exhibit 2, Defendant revised the MAP and required Plaintiff to electronically sign the revised agreement as a mandatory condition of continuing her employment. Plaintiff was given no meaningful choice: sign or lose the job. There was no negotiation and no opt-out opportunity.

- An arbitration agreement presented on a take-it-or-leave-it basis, with termination as the only alternative, raises substantial questions of adhesion and unconscionability under applicable federal and Florida contract law.

- Defendant's simultaneous reliance on the MAP to compel arbitration and its assertion of attorneys' fees against a pro se plaintiff in that same forum compounds the inequity and bad faith of its litigation posture.

- Plaintiff does not concede the enforceability of the MAP and expressly reserves all rights to challenge it on adhesion and unconscionability grounds.

## FACTUAL SUMMARY

9. The following bullet points set forth the key factual allegations supporting all eight counts. Full documentation is provided in the attached exhibits.

## EMPLOYMENT BACKGROUND:

- Plaintiff Renee Russell was employed by PennyMac Loan Services, LLC from December 2, 2019 through August 11, 2025 as a Senior DE Mortgage Underwriter.
- Plaintiff maintained a clean disciplinary record throughout her employment: zero written warnings, zero Performance Improvement Plans, and zero formal disciplinary actions of any kind across more than five years of service.
- PennyMac sponsored Plaintiff for HUD Direct Endorsement (DE) underwriting credentials, covering all training and testing costs, creating personal professional liability for Plaintiff as the DE underwriter of record on federally backed mortgage files.

## WORKERS' COMPENSATION AND ADA VIOLATIONS:

- On February 21, 2025, Plaintiff filed a workers' compensation claim for bilateral carpal tunnel syndrome and back issues.
- On March 19, 2025, Plaintiff received documented ADA medical restrictions and DWC forms requiring 10-minute physical rest breaks every hour. Defendant was formally on notice of these restrictions from this date.
- On March 27, 2025, before Plaintiff had returned to work, Defendant imposed a non-compliant break schedule providing only two uncompensated 15-minute

breaks per shift, requiring Plaintiff to clock out for those breaks and work additional time to make up for breaks to meet production quotas.

- Defendant simultaneously held Plaintiff to the same production quotas as non-injured employees, requiring completion of up to 20 complex loan files per day to meet points per hour production requirement while working against documented medical restrictions.

- Upon Plaintiff's return on March 31, 2025, Defendant's Workforce timekeeping system had not been configured for her medically required breaks. Plaintiff was forced to maintain handwritten manual time cards and submit them daily to managers for approximately two months, despite documented bilateral carpal tunnel syndrome and known hand impairments that made handwriting painful and difficult.

- During the five-month period of March 31, 2025 through August 11, 2025, Defendant assigned Plaintiff three successive direct managers: Dan Cox, then Pone, and then Ken Farnsworth, adding significant disruption to an already medically unstable situation.

- Manager Pone conducted a formal performance review criticizing Plaintiff's production without any knowledge of Plaintiff's ADA restrictions, DWC requirements, or active workers' compensation claim.

- In approximately April-May 2025, Defendant, acting through Dan Cox, Steve Kozak and Maureen Tyler, FVP of Payroll, caused the Workforce system to be reconfigured to automatically deduct Plaintiff's two 15-minute rest breaks from her time records, eliminating compensable break time from her pay.
- On August 8, 2025, Defendant made a second deficient attempt to address accommodations that still failed to comply with Plaintiff's ADA and DWC restrictions, and attempted to compel Plaintiff to remain on shift from August 8, 2025 through September 16, 2025, the day before her scheduled surgery.
- On June 25, 2025 and August 9, 2025, Plaintiff formally complained in writing to management, upper management, HR Director Jenny Rhodes, and CEO David Spector regarding intolerable working conditions, blood pressure emergencies, and compliance concerns. All complaints were ignored.
- CEO David Spector, HR Director Jenny Rhodes, and Senior VP of the Leave Department Kim Lappin had full documented knowledge of all accommodation failures and chose not to remedy them.

## NAME CHANGE AND DOMESTIC VIOLENCE SAFETY:

- On April 29, 2023, Plaintiff legally changed her surname from Perez to Russell. Despite updating Plaintiff's name internally, Defendant's management refused to update Plaintiff's name in the Encompass underwriting system for approximately

800 days, forcing Plaintiff to sign and certify professional mortgage documents under her former name.

- The surname "Perez" was tied to a four-year domestic violence restraining order in effect from November 7, 2021 through December 7, 2025 per Exhibit 11, protecting Plaintiff and her minor children. PennyMac's business address was expressly listed in that restraining order as Plaintiff's place of work. Multiple HR personnel and members of management were fully aware of this restraining order. Compelling Plaintiff to operate under, sign, and certify professional mortgage documents under the name tied to an active domestic violence restraining order created a direct and ongoing safety risk to Plaintiff and her children, a hostile work environment, and constitutes discriminatory and retaliatory treatment against a protected individual.

FMLA VIOLATIONS:

- Defendant issued a deficient FMLA notice dated September 2, 2025 that improperly commingled FMLA-protected leave with workers' compensation documentation, left the 12-week protected leave designation blank, and was issued more than five business days, it was 15 days late

- On November 25, 2025, over two months late after Plaintiff's September 17, 2025 surgery, Defendant issued a second retroactive FMLA notice that also left the 12-

week protected designation blank. Plaintiff believes this second form was issued to obscure the deficiencies in the first.

- In the interim, Defendant severed Plaintiff's COBRA coverage for her entire family without notice, falsely listing "Reduction of Hours" as the qualifying event when Plaintiff had performed zero compensable hours since August 11, 2025.

## 401(K) FREEZE AND COERCION:

- On August 11, 2025, Defendant began a willful administrative freeze of Plaintiff's fully vested 401(k) account, baseline balance $223,118.17, using a fabricated "NON-FMLA leave" classification found in no plan document.

- During the approximately five-and-a-half-month freeze, the target alternative asset IAUM appreciated approximately 60% in value, from $33.42 per share on August 11, 2025 to $53.60 on January 28, 2026, causing Plaintiff a direct, quantifiable capital and opportunity loss of $134,725.45.

- On January 9, 2026, CEO David Spector and HR Director Jenny Rhodes directly demanded that Plaintiff execute a formal resignation in exchange for release of her own retirement funds, with full knowledge of her active EEOC charges and behind Plaintiffs legal counsels back.

- On January 23, 2026, Plaintiff was compelled under duress to execute a formal resignation. Defendant released the funds on January 28, 2026.

- According to Defendant's own DOL Form 5500 filings per Exhibit 4, Defendant designated itself as Plan Sponsor, Plan Administrator, Plan Fiduciary, and Plan Insured, maintaining exclusive, unilateral discretionary authority and control over plan assets under ERISA.

## WHISTLEBLOWER AND RETALIATION:

- Plaintiff raised repeated internal complaints regarding underwriting practices she believed created serious regulatory and False Claims Act exposure, including a "certified income and asset" model requiring sign-off without reviewing those portions, offshore underwriting by multiple individuals touching different facets of the same loan, and FSO sign-off without full file visibility, all of which in Plaintiff's professional judgment exposed her to personal HUD DE liability and potential False Claims Act exposure under 31 U.S.C. § 3729.
- Those complaints were ignored. Following her constructive discharge, Plaintiff filed formal regulatory complaints with HUD and the SEC regarding these practices, constituting protected whistleblower activity.
- Following Plaintiff's February 21, 2025 workers' compensation filing, Defendant immediately issued six unexplained "Penny quality dings" against Plaintiff that adversely affected her bonus, with no prior coaching, no documentation, and no disciplinary history across more than five years of employment.

- Plaintiff formally reported the conduct of Dan Cox and Steve Kozak to HR shortly after filing her workers' compensation claim, following events originating in April-May 2023. This constitutes the earliest documented instance of protected internal complaint activity against these same supervisors.

## BAD FAITH BY INSTITUTIONAL ACTORS:

- Plaintiff filed a Civil Remedy Notice (CRN) with the State of Florida against Chubb and PennyMac for bad faith in the handling of her workers' compensation claim on March 20, 2026 per Exhibit 9.
- Martin Pickett, originally holding the title of Claims Examiner, attempted to re-age Plaintiff's workers' compensation claim after compensability had already been accepted in July 2025, and pressured Plaintiff to execute new paperwork that would reset the claim's timeline.
- On June 16, 2026, that same individual, now holding the title of Claims Director, contacted Plaintiff directly via email to discuss settlement of her workers' compensation claim without the knowledge or participation of Plaintiff's workers' compensation legal counsel, constituting improper direct contact with a represented party. Martin Pickett is facilitating matters as an adjuster without holding a current Florida workers' compensation adjuster license.

- Chubb has made multiple attempts to compel Plaintiff to execute open-ended DEO and SSA authorization forms extending from the date of her birth, and has pressured Plaintiff toward a global settlement that would also release PennyMac from liability. Since Plaintiff's refusal, Chubb has interfered with Plaintiff's medical treatment and ignored documented medical evidence supporting her need for additional surgeries.

- At the time Plaintiff's workers' compensation claim was filed in February 2025, her diagnosed condition was bilateral carpal tunnel syndrome. As a direct result of being forced to work against her documented medical restrictions for nearly five months, and as a direct result of Chubb's subsequent bad-faith delay and denial of medical care, Plaintiff's condition has materially worsened. A recent NCV/EMG study, which Plaintiff paid for entirely out of pocket outside of the workers' compensation system, confirmed the following new and additional diagnoses: (1) Double Crush syndrome in both upper extremities, involving bilateral ulnar nerve and carpal tunnel entrapment; and (2) Radiculopathy in the lower extremities. These conditions were not present in or supported by the original workers' compensation diagnosis and represent a direct and documented physical worsening caused by Defendant's sustained failure to accommodate and Chubb's pattern of medical interference and denial of care. As of the date of this Complaint, Plaintiff has still not undergone her second open carpal tunnel surgery on her left hand, has

not received necessary treatment for her back radiculopathy, and continues to suffer from the compounded effects of these conditions. Plaintiff is currently facing potentially four to five additional surgeries as a direct and proximate result of the worsening of her condition caused by Defendant's sustained failure to accommodate her documented restrictions and Chubb's bad-faith delay of necessary medical care. These are not speculative future procedures; they are medically anticipated based on the confirmed diagnoses of Double Crush syndrome in both upper extremities and lumbar radiculopathy, and the original right-hand open carpal tunnel surgery performed on September 17, 2025 represents only the first of what is now a significantly expanded surgical course.

## CONSTRUCTIVE DISCHARGE:

- On August 11, 2025, Plaintiff was constructively discharged. The working conditions Defendant engineered and maintained were objectively intolerable: nearly five months of being required to work against documented ADA and DWC medical restrictions, unpaid non-compliant break schedules, blood pressure emergencies, demeaning treatment, compliance fears creating potential criminal exposure as a DE underwriter, and a complete refusal by management at every level to remedy any of these conditions despite Plaintiff's repeated documented complaints. No reasonable employee could have continued under those conditions.

## COUNTS ASSERTED

### COUNT I: ERISA SECTION 404 -- BREACH OF FIDUCIARY DUTY

(29 U.S.C. § 1104 -- Active, Immediate Adjudication Requested)

Defendant, as self-designated Plan Sponsor, Plan Administrator, and Plan Fiduciary per Exhibit 4, owed Plaintiff the highest statutory fiduciary duties of loyalty, prudence, and care. Defendant breached those duties by implementing a fabricated "NON-FMLA leave" classification to freeze Plaintiff's fully vested account, blocking Plaintiff's ability to preserve or roll over her retirement assets, and using her vested retirement benefits as economic leverage to extract a waiver of federal claims. Damages: $134,725.45 core market and opportunity losses plus liquidated damages and tax gross-up relief.

### COUNT II: ERISA SECTION 510 -- BENEFIT INTERFERENCE

(29 U.S.C. § 1140 -- Active, Immediate Adjudication Requested)

Defendant weaponized its administrative control over Plaintiff's retirement savings to penalize Plaintiff for her protected regulatory disclosures, create extreme financial duress, and finalize Plaintiff's constructive discharge through a coerced

resignation. This constitutes a willful and intentional violation of ERISA Section 510.

## COUNT III: FMLA -- INTERFERENCE

(29 U.S.C. § 2615(a)(1) -- Active, Immediate Adjudication Requested; Expressly Excluded from Arbitration)

Defendant interfered with Plaintiff's FMLA rights by: failing to provide mandatory timely written notices; issuing a deficient, commingled FMLA form on September 2, 2025 with the 12-week protected designation blank; issuing a second retroactive deficient form on November 25, 2025; severing Plaintiff's COBRA benefits without notice; and using a fabricated non-FMLA classification to freeze Plaintiff's 401(k) assets for nearly six months. This count is expressly excluded from the MAP because it is factually and legally rooted in Defendant's mishandling of Plaintiff's retirement benefit assets.

## COUNT IV: FMLA -- RETALIATION

(29 U.S.C. § 2615(a)(2) -- Active, Immediate Adjudication Requested)

Defendant retaliated against Plaintiff for requesting FMLA-protected leave by inventing an extra-textual non-FMLA penalty framework to freeze her vested

401(k), holding her retirement assets hostage, and executing a constructive discharge against her while she was in an acutely vulnerable post-surgical status. Given Defendant's counsel misconduct and the arbitration delay documented above, a stay of this count is inappropriate.

## COUNT V: COBRA -- FAILURE TO PROVIDE TIMELY NOTICE

(29 U.S.C. § 1166 -- Active, Immediate Adjudication Requested)

The statutory COBRA notice deadline was September 24, 2025, 44 days after Plaintiff's qualifying event of August 11, 2025. Defendant did not provide COBRA notice until October 26, 2025, which is 76 days after the qualifying event and 32 days beyond the statutory deadline. The notice falsely listed Plaintiff as an active participant with no medical benefits and falsely stated "Reduction of Hours" as the qualifying event, when Plaintiff had performed zero compensable hours since August 11, 2025. Statutory penalty: $3,520.00 (32 days at $110 per day under 29 U.S.C. § 1132(c)(1)).

## COUNT VI: ADA -- DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE

(42 U.S.C. § 12112 -- Active, Immediate Adjudication Requested)

Plaintiff is a qualified individual with a disability. Defendant failed to provide any reasonable accommodation compliant with Plaintiff's documented ADA and DWC restrictions across two separate documented attempts, forced Plaintiff to clock out for mandatory medical breaks, required extended shifts to compensate for those breaks, held Plaintiff to identical production quotas as non-injured employees, failed to engage in any good-faith interactive process under the ADA, and ultimately engineered a constructive discharge. Defendant's ADA accommodation obligations did not lapse because Plaintiff was a remote worker, as Defendant falsely claimed in its EEOC rebuttal.

## COUNT VII: ADA AND TITLE VII -- RETALIATION AND COERCION

(42 U.S.C. § 12203 and 42 U.S.C. § 2000e-3 -- Active, Immediate Adjudication Requested)

Plaintiff engaged in multiple independently protected activities: requesting reasonable accommodations; filing formal internal HR complaints; filing EEOC charges; filing regulatory disclosures with HUD and the SEC; and raising False Claims Act compliance concerns regarding Defendant's DE underwriting practices. Defendant retaliated by ignoring formal complaints, subjecting Plaintiff to demeaning and retaliatory conduct, maintaining intolerable working conditions

against medical restrictions, executing a constructive discharge, freezing Plaintiff's 401(k), and directly threatening to withhold her life savings unless she resigned.

## COUNT VIII: FLSA -- WAGE AND HOUR VIOLATIONS AND TIMEKEEPING RETALIATION

(29 U.S.C. §§ 201, 206, 207 -- Active, Immediate Adjudication Requested)

Defendant systematically manipulated Plaintiff's Workforce timekeeping records to dock compensable short rest breaks under 20 minutes, forced Plaintiff to perform additional uncompensated labor during extended shifts, failed to compensate Plaintiff for mandatory pre-shift VPN login time as an integral and indispensable prerequisite to any work, and -- following Plaintiff's February 25, 2025 protected HR complaint -- caused further alteration of Plaintiff's time records through Dan Cox, Steve Kozak, and Maureen Tyler, FVP of Payroll. This post-complaint manipulation constitutes willful retaliation under 29 U.S.C. § 215(a)(3) and triggers the three-year limitations period for willful violations under 29 U.S.C. § 255(a).

## DEFENDANT'S FALSE "ACTIVE PARTICIPANT" CLAIM AND REQUEST FOR SANCTIONS

10. In its June 15, 2026 correspondence, Defendant's counsel asserted that Plaintiff was an "Active Participant" in the 401(k) plan and that no distributable event had occurred. This assertion is demonstrably false. Plaintiff performed zero compensable hours after August 11, 2025. Under the Plan's own Summary Plan Description per Exhibit 3 and under 26 U.S.C. § 401(k)(2)(B), contributions are tied directly to eligible compensation earned during active employment. Plaintiff earned no eligible compensation after August 11, 2025, and no contributions could legally have been made to her account after that date.

11. In its AAA Answer and Affirmative Defenses per Exhibit 7, and in its EEOC rebuttal per Exhibit 8, Defendant asserted Affirmative Defense No. 22, claiming entitlement to reasonable attorneys' fees and costs against this pro se plaintiff. This assertion is an improper and bad-faith fee-shifting threat. Each count in this Complaint arises from Defendant's own documented conduct and is supported by a good-faith basis in fact and law. Fee-shifting against a pro se plaintiff in a non-frivolous federal employment action is not warranted under any applicable standard.

12. Plaintiff respectfully requests that this Court: (i) issue an order finding that Defendant's "active participant" representation was factually unsupported and made in bad faith to delay the lawful disbursement of Plaintiff's fully vested

retirement funds; (ii) impose sanctions pursuant to Fed. R. Civ. P. 11 and the Court's inherent authority against Defendant and its counsel for the fee-shifting threat; and (iii) bar Defendant from seeking or recovering attorneys' fees or costs against Plaintiff in this or any parallel proceeding.

## ITEMIZATION OF DAMAGES

Court Track -- Counts I, II, III, V (Active, Immediate Adjudication):

- Core market and opportunity loss restitution: $134,725.45
- FMLA statutory liquidated damages (100% match): $134,725.45
- Tax gross-up relief (24% Net-to-Gross formula): $64,668.22
- COBRA statutory notice penalty (32 days at $110/day): $3,520.00
- Court Track Total: $337,639.12

Employment Track -- Counts IV, VI, VII, VIII:

- FLSA statutory double-wage damages: $106,569.52
- ADA and FCRA compensatory and emotional distress damages (statutory cap): $300,000.00

- Employer-induced medical aggravation and career loss multiplier, reflecting the documented and medically confirmed worsening of Plaintiff's condition from the original bilateral carpal tunnel diagnosis to Double Crush syndrome in both upper extremities (bilateral ulnar nerve and carpal tunnel entrapment) and Radiculopathy in the lower extremities, as confirmed by NCV/EMG testing Plaintiff paid for entirely out of pocket outside of the workers' compensation system. This worsening was caused by Defendant's sustained failure to accommodate Plaintiff's documented medical restrictions for nearly five months and by Chubb's bad-faith delay of necessary medical care. These new diagnoses compound Plaintiff's long-term career and earning capacity losses and require additional surgeries beyond those originally anticipated: TBD at trial
- Back pay, front pay, and credential rehabilitation: $1,682,660.00
- Employment Track Subtotal (excluding TBD medical aggravation): $2,089,229.52

TOTAL QUANTIFIED DAMAGES: $2,426,868.64

Plus: TBD medical aggravation damages (to be determined at trial based on medical evidence)

Plus: Punitive damages to be determined by the jury

Plus: Reasonable attorney's fees and litigation costs

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff Renee Russell respectfully requests that this Court enter judgment in her favor and against Defendant PennyMac Loan Services, LLC, and grant the following relief:**

a. Compensatory restitution of $134,725.45 for core market and opportunity losses caused by Defendant's unlawful 401(k) freeze;

b. FMLA statutory liquidated damages of $134,725.45;

c. Tax gross-up relief of $64,668.22 under the Net-to-Gross accounting formula;

d. Statutory COBRA notice penalties of $3,520.00 under 29 U.S.C. § 1132(c)(1);

e. FLSA statutory double-wage damages of $106,569.52 under 29 U.S.C. § 216(b);

f. ADA and FCRA compensatory and emotional distress damages up to $300,000.00;

g. Employer-induced medical aggravation damages pursuant to 28 U.S.C. § 1367, Fla. Stat. § 440.11(1)(b), and Fla. Stat. § 768.71 et seq., reflecting the medically confirmed worsening of Plaintiff's condition from bilateral carpal tunnel syndrome to Double Crush syndrome in both upper extremities (bilateral ulnar nerve and carpal tunnel entrapment) and Radiculopathy in the lower extremities, as confirmed by NCV/EMG testing Plaintiff paid for entirely out of pocket outside of the workers' compensation system. This worsening was directly caused by Defendant's sustained failure to accommodate Plaintiff's documented restrictions for nearly five months and by Chubb's bad-faith delay of necessary medical care. As of the date of this filing, Plaintiff faces potentially four to five additional surgeries, including a second open carpal tunnel decompression on her left hand, surgical intervention for Double Crush syndrome in both upper extremities, and treatment for lumbar radiculopathy. The September 17, 2025 right-hand surgery represents only the first in what is now a significantly expanded and ongoing surgical course. These procedures were not anticipated at the time of the original workers' compensation diagnosis, which identified only bilateral carpal tunnel syndrome, and represent a direct, documented, and medically confirmed escalation caused by Defendant's conduct and Chubb's medical interference. The full extent of Plaintiff's medical aggravation damages, including future surgical costs, lost

earning capacity, and long-term impairment, cannot be fully quantified until treatment is complete: TBD at trial;

h. Back pay, front pay, and credential rehabilitation damages of $1,682,660.00;

i. Punitive damages in an amount to be determined by the jury;

j. A judicial declaration that Defendant interfered with Plaintiff's protected leave and breached its ERISA fiduciary duties by utilizing Plaintiff's retirement benefits as coercive leverage;

k. A judicial declaration that Defendant's counsel, Troutman Pepper Locke, engaged in unauthorized practice of law in Florida from January through June 2026;

l. Reasonable attorney's fees and litigation costs under 29 U.S.C. § 1132(g)(1), 42 U.S.C. § 2000e-5(k), and 29 U.S.C. § 216(b);

m. Sanctions pursuant to Fed. R. Civ. P. 11 and this Court's inherent authority against Defendant and its counsel for: (i) asserting a materially false "active participant" status after August 11, 2025 to obstruct the lawful disbursement of Plaintiff's fully vested retirement funds; and (ii) asserting a bad-faith attorney's fee-

shifting threat against a pro se plaintiff in a non-frivolous federal employment action;

n. An order barring Defendant and its counsel, Troutman Pepper Locke, from seeking, claiming, asserting, or recovering attorneys' fees or costs against Plaintiff in this federal proceeding, in the parallel AAA arbitration proceeding, Case No. 01-26-0003-0556, or in any other forum, venue, or proceeding, whether pending or future, on the following grounds:

(i) This Complaint is non-frivolous. Every count is grounded in documented facts, supported by applicable federal law, and filed to protect statutory rights that carry specific congressional deadlines. Fee-shifting against a pro se plaintiff in a non-frivolous federal employment action is not warranted under any applicable standard, including the standard established for prevailing defendants under Title VII, the ADA, the FMLA, and ERISA.

(ii) Defendant itself demanded and compelled arbitration through the MAP. Defendant cannot demand that a pro se employee submit to private arbitration, strip her of her right to a jury trial, delay that arbitration at every stage through late fee payments, last-minute filings, and failure to participate in arbitrator selection, and then turn that same forum into a vehicle to extract legal fees from the

employee it forced into it. That posture is not good-faith use of a dispute resolution mechanism. It is weaponization.

(iii) The fee-shifting threat was asserted as Affirmative Defense No. 22 in Defendant's AAA Answer filed July 23, 2026, against a self-represented plaintiff who is still without necessary surgery, still without complete medical treatment, and still without the retirement funds she was coerced into relinquishing under duress. Asserting an attorneys' fees claim in that context is not a legitimate litigation position. It is institutional pressure designed to deter a pro se litigant from pursuing valid federal claims.

(iv) Defendant's counsel, Troutman Pepper Locke, engaged in unauthorized practice of law in Florida from January through June 2026, conducting substantive adverse legal activity against this Plaintiff without Florida Bar licensure, without pro hac vice admission, and against a pro se party with no legal counsel to shield her. Counsel that engaged in that conduct has no standing in equity to seek fees from the party it subjected to that conduct.

(v) Any award of attorneys' fees in favor of a multi-billion dollar institutional defendant and its national law firm against a self-represented injured worker pursuing non-frivolous federal employment, ERISA, FMLA, ADA, and FLSA

claims would be unjust, inequitable, and directly contrary to the remedial and protective purposes of every federal statute under which Plaintiff brings her claims. This Court has the inherent authority and equitable power to bar such an award, and Plaintiff respectfully urges the Court to exercise it;

o. In the alternative, should this Court determine that any count covered by Defendant's MAP should not proceed to immediate trial, Plaintiff respectfully requests that this Court retain jurisdiction, decline to dismiss any count, and enter a limited stay of only those arbitration-covered counts pending the outcome of the parallel AAA arbitration, Case No. 01-26-0003-0556. Plaintiff specifically requests that this Court not dismiss any count, as dismissal would extinguish Plaintiff's 90-day EEOC right-to-sue window and her ERISA statute of limitations. Plaintiff has fully complied with all applicable statutes of limitations on every count and asks this Court to hold this Complaint open to protect those rights if arbitration does not fully resolve the covered claims;

p. Such other equitable, statutory, or injunctive relief as this Court deems just and proper.

## SELECTIVE DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on Counts IV (FMLA Retaliation), VI (ADA Discrimination), VII (ADA and Title VII Retaliation), and VIII (FLSA Wage Theft). No jury trial is demanded on the equitable and benefits-related claims under ERISA (Counts I, II, and V) or Count III (FMLA Interference).

Respectfully submitted,

Renee Russell, Pro-Se

6929 Five Oaks Drive

Harmony, FL 34773

407-752-4178

Mrsrussell1970@gmail.com

Date: July 29 , 2026

## INDEX OF EXHIBITS

Exhibit 1: Original Arbitration Agreement signed at commencement of employment, December 2019

Exhibit 2: Mutual Arbitration Policy (MAP), electronically signed March 27, 2023

Exhibit 3: Summary Plan Description (SPD) for PennyMac 401(k) Retirement Plan

Exhibit 4: DOL Form 5500 -- Defendant designated as Plan Sponsor, Plan Administrator, Plan Fiduciary, and Plan Insured

Exhibit 5: U.S. EEOC Form 5, Charge of Discrimination, Charge No. 510-2026-02800

Exhibit 6: U.S. EEOC Notice of Right to Sue, Charge No. 510-2026-02800, dated June 23, 2026

Exhibit 7: Defendant's Answer and Affirmative Defenses in AAA Arbitration Case No. 01-26-0003-0556, including Affirmative Defense No. 22 (attorney's fees claim)

Exhibit 8: Defendant's Formal Rebuttal to Plaintiff's EEOC Charge No. 510-2026-02800 (including Defendant's false assertion that Plaintiff as a remote worker was free to take unlimited breaks)

Exhibit 9: Civil Remedy Notice (CRN) filed with the State of Florida against Chubb and Defendant PennyMac for bad faith in the handling of Plaintiff's workers' compensation claim, March 20, 2026

Exhibit 10: Photograph of right-hand post-surgery open carpal tunnel decompression, September 17, 2025

Exhibit 11: Four-Year Domestic Violence Restraining Order in effect November 7, 2021 through December 7, 2025, naming PennyMac's business address as

Plaintiff's place of work, obtained for the protection of Plaintiff and her minor children

## AI DISCLOSURE CERTIFICATION

Generative artificial intelligence (Prosei AI powered by Claude Opus 4.6) was used in the preparation of this filing. The undersigned certifies that all factual assertions, legal authority, and citations have been independently reviewed and verified for accuracy.

Renee Russell, Pro Se

Date: July 29, 2026