**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

Case No. 6:26-CV-01650-JSS-DCI

RENEE RUSSELL (formerly Renee Perez),

Plaintiff,

v.

PENNYMAC LOAN SERVICES, LLC, a/k/a
PRIVATE NATIONAL MORTGAGE
ACCEPTANCE COMPANY, LLC,

Defendant.
_________________________________________/

# DEFENDANT PRIVATE NATIONAL MORTGAGE ACCEPTANCE COMPANY, LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), Defendant Private National Mortgage Acceptance Company, LLC ("Pennymac" or "Defendant")[1] moves this Court to compel Plaintiff Renee Russell (formerly Renee Perez) ("Plaintiff") to submit her claims to arbitration in accordance with the parties' binding

[1] In her Complaint, Plaintiff names PennyMac Loan Services, LLC a/k/a Private National Mortgage Acceptance Company, LLC as the Defendant. The correct legal name for Defendant is Private National Mortgage Acceptance Company, LLC ("Pennymac").

agreement.[2] Pennymac further requests the Court to stay this action pending the completion of arbitration. In support thereof, Pennymac respectfully shows the Court as follows:

## I. INTRODUCTION

On March 27, 2023, Plaintiff electronically executed the Mutual Arbitration Policy and accompanying Employee Agreement to Arbitrate (together, the "MAP") as a condition of her employment with Pennymac. *See* Doc. 1-2, MAP. The MAP is a valid, enforceable arbitration agreement governed by the FAA, in which Plaintiff and Pennymac agreed that any disputes between the two parties arising out of Plaintiff's Pennymac employment would be resolved through mandatory and binding arbitration. Specifically, it covers "any and all disputes relating to or arising out of [Plaintiff's] employment relationship with any Pennymac entity or the termination of that relationship." On May 1, 2026, Plaintiff initiated an

[2] Pennymac files this Motion to Compel Arbitration in lieu of an answer because, in this District, "[m]otions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Agostino v. Ally Fin. Inc.*, No. 8:18-CV-1202-T-36TGW, 2019 WL 13142893, at *3 (M.D. Fla. Jan. 29, 2019) (quoting *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1222 (M.D. Fla. 2013)). In the event the Court denies the Motion to Compel Arbitration, in whole or in part, Pennymac reserves all rights to answer and respond to the allegations in Plaintiff's Complaint. Further, by filing this Motion to Compel Arbitration, Pennymac does not waive any available defenses or rights, including any defenses, objections, or arguments under Fed. R. Civ. P. 12(b)(6). Should the Court deny this Motion, Plaintiff's Complaint will be subject to dismissal for numerous alternative and independent reasons under Rule 12(b)(6).

arbitration against Pennymac. However, she later asked the American Arbitration Association ("AAA") to stay those proceedings. On July 29, 2026, Plaintiff filed this lawsuit against Pennymac, asserting many of the same claims raised in arbitration.

Here, all eight of Plaintiff's counts asserted in the Complaint—ERISA breach of fiduciary duty (Count I), ERISA benefit interference (Count II), FMLA interference (Count III), FMLA retaliation (Count IV), COBRA notice (Count V), ADA discrimination (Count VI), ADA/Title VII retaliation (Count VII), and FLSA wage-and-hour violations (Count VIII)—arise from or relate to Plaintiff's employment with Pennymac or the termination of her Pennymac employment. Despite Plaintiff's attempt to characterize the claims otherwise and segregate her causes of action into a (1) "Court Track" for "Active, Immediate Adjudication," and (2) an "Employment Track," all her claims are subject to mandatory, binding arbitration. For the reasons set forth below, the Court should enforce the parties' agreement to arbitrate, compel Plaintiff's claims to arbitration, and stay this action pending the completion of arbitration.

## II. STATEMENT OF FACTS

### A. Plaintiff's Pennymac Employment and the MAP.

Plaintiff was employed by Pennymac from December 2019 through August 2025. Doc. 1, Compl. at p. 9. As a condition of her Pennymac

employment, Plaintiff was subject to Pennymac's standard employment policies and agreements, including the MAP. On March 27, 2023, Plaintiff electronically signed and agreed to all terms in the MAP. *See* Doc. 1-2, MAP.

The MAP is governed solely by the FAA, 9 U.S.C. § 1, *et seq.*, including its procedural provisions. *Id.* at p. 3. The MAP covers "any and all disputes relating to or arising out of [Plaintiff's] employment relationship with any Pennymac entity or the termination of that relationship." *Id.* at p. 2. The covered claims expressly include, "but [are] not limited to," the following:

> [C]laims . . . for wrongful termination of employment, breach of contract, fraud, employment discrimination, harassment or retaliation, claims under the Americans With Disabilities Act, . . . the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964 and its amendments, . . . tort claims, as well as wage, overtime or penalty claims . . . or any other legal or equitable claims and causes of action recognized by local, state or federal law or regulations.

*Id.* The MAP excludes only three categories of claims, none of which form the basis of any of Plaintiff's eight counts in the Complaint: (1) "claims for workers' compensation benefits"; (2) claims related to "unemployment compensation benefits"; and (3) "claims based on a retirement or benefit plan containing an arbitration or other resolution procedure." *Id.*

The MAP is bilateral, requiring both Pennymac and Plaintiff to arbitrate any covered claims. *Id.* at p. 3. With respect to costs, the MAP provides that Plaintiff's share "shall not exceed an amount equal to [the] local court civil

filing fee," and "Pennymac will pay all of the remaining fees and administrative costs of the arbitrator and the AAA." *Id.* at pp. 4–5. Finally, the MAP expressly contemplates a stay of inarbitrable claims: "Inarbitrable claims, if any, shall be stayed by any court that is asked to enforce the MAP . . . pursuant to Section 3 of the FAA." *Id.* at p. 3.

**B. Plaintiff Voluntarily Submitted Her Claims to AAA Arbitration.**

On May 1, 2026, Plaintiff voluntarily initiated arbitration with the AAA and filed a Demand for Arbitration. Exhibit A. The claims Plaintiff voluntarily submitted to AAA overlap with, and in several respects are identical to, Counts IV, VI, VII, and VIII of the Complaint. In the AAA Demand, Plaintiff asserted constructive discharge effective August 11, 2025, disability discrimination, retaliation under Title VII and the ADA, FMLA and COBRA interference, time-card manipulation, wage theft, ERISA violations, failure to accommodate documented medical restrictions, an intolerable work environment intended to force resignation, and whistleblower retaliation tied to HUD/FHA underwriting compliance. *Id.*

On June 24, 2026, the AAA's case administrator emailed Pennymac regarding payment for its share of the filing fee. Exhibit B. Pennymac forwarded the request to its outside counsel, who promptly contacted the AAA to make a payment arrangement. *Id.* Pennymac's outside counsel explained to the AAA:

> Yesterday afternoon, Pennymac became aware that Renee Russell initiated an arbitration against the Company. It appears she listed the Company's CEO as the client contact (rather than Pennymac's attorneys, with whom she has previously contacted). Accordingly, we were unaware until yesterday afternoon that Ms. Russell initiated a demand, or that any filing fee was due.

*Id.* Accordingly, the AAA granted Pennymac an extension through July 9, 2026, to pay its share of the filing fee. *Id.* Notwithstanding the extension, Pennymac wired the payment to the AAA the following day – June 25, 2026. Exhibit C.

On July 8, 2026, the AAA case administrator circulated its initiation letter and a panel of proposed arbitrators. Exhibit D. In its initiation letter, the AAA stated that Pennymac "has until **July 23, 2026** to file an answer to the claim. If an answer is not received, [the AAA] will assume a general denial." *Id.* (emphasis in original). Accordingly, Pennymac was permitted, but not required, to file an Answer. The initiation letter also stated that the parties must submit arbitrator strike lists and a Checklist for Conflicts by July 23, 2026. *Id.*

Pennymac previously retained undersigned counsel and the law firm Troutman Pepper Locke LLP to represent it in this matter. On July 9, 2026, pursuant to Rule 1-3.11 of the Rules Regulating the Florida Bar, Pennymac's out-of-state counsel—Paul Nason and Aaron Nava—filed Verified Statements with the Florida Bar and served copies on the AAA and Plaintiff. Exhibit E, F.

On the deadline to do so—July 23, 2026—Pennymac timely filed its Answer to Plaintiff's Demand for Arbitration. *See* Exhibit G. The same day, Pennymac timely: (1) submitted its Checklist for Conflicts; and (2) emailed the AAA case administrator its confidential arbitrator strike list. Exhibit H. Accordingly, Pennymac satisfied all deadlines set by the AAA.

Later in the day on July 23, 2026, and after Pennymac timely filed its Answer, Plaintiff filed an "Arbitration Statement of Claim and Itemization of Damages." Exhibit I. Pennymac construed this filing as an Amended Demand for Arbitration. Similar to her Complaint in this suit, the Amended Demand for Arbitration asserts FLSA wage-theft claims for alleged break and gap-time shaving, unpaid pre-shift VPN login time, ADA/FCRA disability and retaliation awards, alleged medical aggravation tied to failure to accommodate and constructive discharge, career and credential-loss damages, and punitive damages based on alleged retaliatory and oppressive employment conduct. *Id.*

On July 30, 2026, the AAA appointed an arbitrator based on the parties' strike lists and rankings – Armando A. Rodriguez-Feo, Esq. Exhibit J. And on August 5, 2026, Pennymac timely filed an Answer to Plaintiff's Amended Demand for Arbitration. Exhibit K.

Rather than continue to arbitrate her claims, Plaintiff: (1) requested that the AAA stay proceedings for 90 days; and (2) filed a document titled, "Claimant/Respondent's Protective Answer and General Denial." Exhibits L,

M. On August 6, 2026, the AAA confirmed that the case was stayed for 90 days pursuant to AAA Employment Rule R-2. Exhibit N.[3]

## III. ARGUMENT

### A. Legal Standard

The Federal Arbitration Act provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA embodies "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U. S. 1, 24 (1983). "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA **compels** the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (emphasis added).

[3] In her Complaint, Plaintiff appears to allege that arbitration is improper (or that Pennymac delayed arbitration) because Paul Nason and Aaron Nava of Troutman Pepper Locke LLP engaged in the unauthorized practice of law in the State of Florida. Plaintiff filed a complaint with the Florida bar against Mr. Nava, the Florida Bar fully investigated those allegations, and the Florida Bar dismissed Plaintiff's complaint. Specifically, the Florida Bar held that Mr. Nava did not engage in unauthorized practice of law in Florida. Exhibit O. Mr. Nason and Mr. Nava are members in good standing in every state in which they are licensed to practice law, both attorneys have at all times complied with the Rules Regulating the Florida Bar, and both intend to file applications for admission *pro hac vice* in this matter.

Indeed, the FAA "**requires** courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement'; and § 4 [of the FAA] **requires** courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement . . . ." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (citation modified) (emphasis added).

The FAA requires courts to "rigorously enforce agreements to arbitrate." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1357–58 (11th Cir. 2002) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985)), *abrogated on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs*, 571 U.S. 177 (2014); *see also Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Where, as here, the parties agreed to arbitration, "the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.*, 470 U.S. at 218 (citations modified).

**B. Plaintiff Agreed to Submit Her Employment-Related Claims to Arbitration.**

Whether parties have agreed to submit a dispute to binding arbitration in lieu of litigation is a matter of law for the Court to decide. *Kravets v. Anthropologie, Inc.*, No. 22-cv-60443, 2022 WL 1978712, at *2–3 (S.D. Fla. June 6, 2022) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). In the Eleventh Circuit, courts consider the following factors when deciding a motion to compel arbitration: "(1) whether a valid agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived." *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010), *aff'd*, 433 F. App'x 842 (11th Cir. 2011) (citing *Integrated Sec. Services v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1324 (S.D. Fla. 2009)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25; *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

Here, there is no dispute that Plaintiff voluntarily agreed to arbitrate her employment-related claims with Pennymac and, in fact, she initiated an arbitration prior to filing this lawsuit. Plaintiff should be held to her agreement, particularly because: (1) the MAP is a valid and enforceable

arbitration agreement; (2) all the counts asserted in the Complaint are arbitrable; and (3) Pennymac has not waived the right to arbitrate.

*1. A Valid Arbitration Agreement Exists.*

The MAP constitutes a valid written agreement to arbitrate governed by the FAA. To determine whether the parties formed a valid agreement to arbitrate, the Court applies ordinary principles of state contract law. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists."). Under the FAA, the MAP is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

By enacting the FAA, Congress intended to ensure the "[enforcement of arbitration] agreements into which parties had entered, . . . and to place such agreements 'upon the same footing as other contracts.'" *Allied-Bruce Terminix Co., Inc. v. Dobson,* 513 U.S. 265, 270–71 (1995) (citation modified). The saving clause in section 2 of the FAA "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC*, 563 U.S. at 339 (citation modified). "[N]othing in [the FAA] suggests an intent to preserve state-law rules that stand as an obstacle

to the accomplishment of the FAA's objectives." *Id.* at 343 (internal citations omitted). As the Supreme Court stated in *Allied-Bruce Terminix,* states may not "decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The [FAA] makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal 'footing,' directly contrary to the [FAA's] language and Congress' intent." 513 U.S. at 281.

"The party seeking to avoid arbitration bears the burden of establishing that the agreement in question should not be enforced." *Tyman v. Ford Motor Co.*, 521 F. Supp. 3d 1222, 1225 (S.D. Fla. 2021) (citation modified). Here, Plaintiff cannot meet the burden of showing that the MAP is invalid. Plaintiff electronically signed the MAP on March 27, 2023, acknowledging that "the MAP is a condition of [her] employment" and agreeing "to submit to final and binding arbitration any and all claims and disputes related in any way to my employment or the termination of my employment." Doc. 1-2, MAP at p. 5. The DocuSign Certificate of Completion confirms that Plaintiff viewed and signed the agreement. *Id.* at p. 6.

Further, Plaintiff's continued employment with Pennymac after the MAP's effective date constitutes acceptance. *See Caley*, 428 F.3d at 1374–75 (continued employment constitutes acceptance of employer's arbitration

agreement where agreement was condition of employment). Accordingly, a valid arbitration agreement exists between the parties.[4]

*2. All Eight Counts of the Complaint Are Arbitrable Issues.*

Second, all eight counts of the Complaint fall within the scope of the MAP. Where a valid arbitration provision exists, "there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc.*, 475 U.S. at 650 (internal quotation marks omitted). Although "doubts should be resolved in favor of coverage," here, there is no doubt. *Id.* (citation modified).

The MAP covers "any and all disputes relating to or arising out of [Plaintiff's] employment relationship with any Pennymac entity or the

[4] In her Complaint, Plaintiff purports to "raise[] a threshold challenge to the enforceability of" the MAP on the grounds that "[a]n arbitration agreement presented on a take-it-or-leave-it basis, with termination as the only alternative, raises substantial questions of adhesion and unconscionability under applicable federal and Florida contract law." Doc. 1, Compl. at pp. 7–8. Plaintiff offers no support for this argument. Regardless, courts in Florida and the Eleventh Circuit are clear on this point: employment arbitration agreements that are offered to employees on a take-it-or-leave-it basis, as a condition of employment, are enforceable. *See Hobby Lobby Stores, Inc. v. Cole*, 287 So. 3d 1272, 1275–77 (Fla. 5th DCA 2020) (enforcing "take-it-or-leave-it" employment arbitration agreement where no evidence employee could not read agreement, employer pressured or coerced employee into signing, or terms were buried in fine print); *Caley*, 428 F.3d at 1374–78 (upholding bilateral arbitration agreement presented after employment began, explaining continued employment is sufficient consideration).

termination of that relationship." Doc. 1-2, MAP at p. 2. The MAP expressly identifies as covered claims those involving "employment discrimination, harassment or retaliation, claims under the Americans With Disabilities Act, . . . the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, . . . as well as wage, overtime or penalty claims." *Id.* Here, all eight of Plaintiff's counts are subject to the MAP's broad coverage, and none of the MAP's three exclusions apply because Plaintiff has not asserted claims against Pennymac for workers' compensation benefits, unemployment compensation benefits, or based on a retirement or benefit plan that contains its own arbitration or dispute resolution procedure.

In her Complaint, Plaintiff attempts to segregate her causes of action on a "Court Track" for "Active, Immediate Adjudication" and an "Employment Track." Regardless of her unilateral characterization of her claims, the underlying allegations make clear that all claims are subject to mandatory arbitration pursuant to the MAP:

- **Count I (ERISA § 404 Breach of Fiduciary Duty):** Plaintiff alleges that Pennymac used a leave classification to freeze Plaintiff's 401(k) account during the employment separation and leveraged vested retirement benefits to extract a resignation. This is not a claim to recover ERISA plan funds. Instead, Pennymac's alleged conduct surrounding the treatment of Plaintiff's 401(k) as it relates to her termination is a dispute

"relating to . . . the termination of [the] employment relationship" within the MAP's plain language. Courts have held that claims involving Section 404 of ERISA are arbitrable. *See, e.g.*, *Southside Internists Grp. PC Money Purchase Pension Plan v. Janus Cap. Corp.*, 741 F. Supp. 1536, 1537–39 (N.D. Ala. 1990) (holding ERISA claims, including claims under sections 404 and 406–409, are arbitrable under FAA). Moreover, the MAP covers all claims "relating to or arising out of [Plaintiff's] employment relationship," which courts have held should be construed broadly to include "virtually all disputes between contracting parties." Doc. 1-2, MAP at p. 2; *Calcaterra v. Baptist Health S. Fla., Inc.*, 733 F. Supp. 3d 1349, 1356 (S.D. Fla. 2024) (collecting authorities).

- **Count II (ERISA § 510 Benefit Interference)**: Plaintiff frames this claim as a constructive-discharge/coerced-resignation theory arising from her employment. Indeed, Section 510 of ERISA, 29 U.S.C. § 1140, is a federal employment anti-retaliation statute that prohibits employers from taking an adverse action against employees who exercise their rights under ERISA. Thus, Plaintiff has alleged facts related to a dispute arising from or relating to the termination of the employment relationship falling within the scope of the MAP. *See Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000) ("[W]e have noted that 'an arbitration agreement [need not] specifically list every

federal or state statute it purports to cover.'") (citation modified); *see also* Doc. 1-2, MAP at p. 2 ("The claims covered by the MAP include any and all claims or disputes for which a state or federal court otherwise would be authorized to grant relief, including, but not limited to . . . claims under . . . any other state or local anti-discrimination laws . . . or any other legal or equitable claims and causes o[f] action recognized by local, state or federal law or regulations"). Courts have held that individual claims under ERISA are arbitrable. *Southside Internists Grp.*, 741 F. Supp. at 1537–39.

- **Count III (FMLA Interference):** Plaintiff challenges Pennymac's administration of employment leave, FMLA notice obligations, leave classification, and actions relating to Plaintiff's protected leave status—all of which arise from the employment relationship. The FMLA is a federal employment statute, and it falls within the scope of the MAP. *See id.* Courts have held FMLA claims are arbitrable. *Hines v. Signature Payroll Servs., LLC*, No. 8:24-CV-648-TPB-TGW, 2024 WL 4475592, at *2 (M.D. Fla. Sept. 30, 2024).
- **Count IV (FMLA Retaliation)**: Plaintiff alleges that Pennymac retaliated against Plaintiff for exercising FMLA rights—an employment dispute arising from the employment relationship, arising under a federal employment statute that is covered by the MAP. *See Brown*, 211

F.3d at 1222. As explained above, courts have held FMLA claims are arbitrable. *Hines*, 2024 WL 4475592, at *2; *Legrand v. Cintas Corp. No. 2*, No. 10-62476-CIV, 2011 WL 13217283, at *2 (S.D. Fla. Apr. 5, 2011).

- **Count V (COBRA Notice)**: Plaintiff alleges Pennymac failed to provide timely notice of continuation-coverage rights following a qualifying event. Here, the qualifying event was the termination of Plaintiff's Pennymac employment. Accordingly, a claim related to an alleged deficient COBRA notice "relat[es] to or aris[es] out of . . . the termination of [the employee's employment] relationship" and falls within the MAP's coverage. Courts have held that COBRA claims are arbitrable. *Grant v. JP Morgan Chase & Co.*, No. 8:19-CV-1808-T-02SPF, 2019 WL 5215711, at *3 (M.D. Fla. Oct. 16, 2019) (compelling arbitration of former employee's COBRA deficient-notice claim against employer, holding that "statutory violations fall within the covered claims" of FAA arbitration agreement).
- **Count VI (ADA Discrimination/Failure to Accommodate)**: Plaintiff asserts claims for disability discrimination and failure to accommodate under the ADA—claims expressly listed in the MAP. Indeed, Plaintiff previously submitted this claim to arbitration prior to pausing those proceedings to file this lawsuit. Courts have held that ADA claims are arbitrable. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1314 (11th Cir.

2002) ("[T]he ADA permits compulsory arbitration of claims arising under the statute.") (citation modified).

- **Count VII (ADA/Title VII Retaliation and Coercion)**: Plaintiff alleges retaliation under both the ADA and Title VII. These claims are expressly covered by the MAP's reference to the ADA and Title VII. Plaintiff previously submitted these claims to arbitration prior to pausing those proceedings to file this lawsuit. Courts have held that ADA and Title VII claims are arbitrable. *Id.* at 1313–14 ("Title VII claims may also be subject to compulsory arbitration.").
- **Count VIII (FLSA Wage and Hour)**: Plaintiff alleges various wage-and-hour violations under the FLSA. These claims are expressly covered by the MAP's reference to the FLSA, and Plaintiff previously submitted these claims to arbitration prior to pausing those proceedings to file this lawsuit. Courts have held that FLSA claims are arbitrable. *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1330 (11th Cir. 2014).

Simply put, all of Plaintiff's claims fall squarely within the scope of the MAP, and the Court should compel arbitration.

*3. Pennymac Has Not Waived the Right to Arbitrate.*

Waiver is "the intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022). Pennymac has neither relinquished its right to compel Plaintiff into arbitration nor acted

inconsistently with that right. Specifically, Pennymac has not yet answered Plaintiff's Complaint and has not "invoked the litigation machinery before reversing course and claiming that arbitration was the proper avenue all along." *Payne v. Savannah Coll. of Art & Design, Inc.*, 81 F.4th 1187, 1201 (11th Cir. 2023) (citation modified). Pennymac has been forthright about its intention to enforce its arbitration agreement with Plaintiff and has acted in all ways consistently with that intention.

Plaintiff voluntarily initiated arbitration, but she then asked the AAA to stay those proceedings so that she could file this lawsuit. Accordingly, Plaintiff, not Pennymac, has refused to participate in arbitration. Indeed, in the AAA proceedings that Plaintiff paused, Pennymac paid its share of the filing fee, timely filed an Answer to the Demand for Arbitration, timely submitted its arbitrator rankings and strike list, timely filed an Answer to Plaintiff's Amended Demand for Arbitration, and has sought to arbitrate all claims between Plaintiff and Pennymac. Accordingly, Pennymac has not waived its rights, and the Court should compel the Complaint to arbitration.

### C. The Court Should Stay All Proceedings Pending Completion of Arbitration.

Finally, Pennymac requests that this Court stay all proceedings pending completion of arbitration. Under Section 3 of the FAA, when a suit involves issues referable to arbitration and a party requests a stay, the court "shall"

stay the action. 9 U.S.C. § 3. The Supreme Court recently confirmed that this language is mandatory where a stay has been requested. *Smith v. Spizzirri*, 601 U.S. at 478 ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

Even if the Court declines to compel any particular count of the Complaint to arbitration, Pennymac respectfully requests that the Court exercise its inherent authority to stay such claims pending completion of arbitration on the remaining claims. Courts have inherent authority to manage their dockets and to stay proceedings where resolution of other claims will likely narrow or moot the remaining issues. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). Here, all eight counts share a common factual nucleus—Plaintiff's employment with Pennymac and the circumstances surrounding the termination of her employment. As a result, simultaneously proceeding in both federal court and arbitration on related claims would waste judicial resources, risk inconsistent findings, and prejudice the parties. Importantly, the parties agreed to such a stay in the MAP: "Inarbitrable claims, if any, shall be stayed by any court that is asked to enforce the MAP . . . pursuant to Section 3 of the FAA." Doc. 1-2, MAP at p. 3. Accordingly, the Court should stay this action.

## IV. CONCLUSION

For the foregoing reasons, Pennymac respectfully requests that this Court compel Plaintiff to arbitrate all eight counts of the Complaint, and stay all proceedings in this action pending completion of binding arbitration. In the event the Court finds that any claims asserted in the Complaint are not subject to mandatory arbitration, such claims should nevertheless be stayed pending the completion of arbitration.

*/s/ Dale A. Evans, Jr.*
Dale A. Evans, Jr.
Florida Bar No. 98496
dale.evans@troutman.com
**TROUTMAN PEPPER LOCKE LLP**
777 S. Flagler Drive, Suite 215 East Tower
West Palm Beach, FL 33401
Telephone: (561) 833-7700
Facsimile:(561) 655-8719

Counsel for Defendant Private National Mortgage Acceptance Company, LLC

## CERTIFICATE OF CONFERENCE

In compliance with Middle District of Florida Local Rule 3.01(g), I hereby certify that, prior to filing this Motion to Compel Arbitration, I conferred with Plaintiff on August 21, 2026 via email regarding the relief requested herein. Plaintiff opposes the relief sought herein.

*/s/ Dale A. Evans, Jr.*
Dale A. Evans, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2026, a true and correct copy of the foregoing was filed with the Clerk of Court using CM/ECF. Because Plaintiff is a pro se litigant who may not be a registered CM/ECF user, a true and correct copy of the foregoing was also served via U.S. First-Class Mail, postage prepaid, addressed to:

Renee Russell
6929 Five Oaks Drive
Harmony, FL 34773

*/s/ Dale A. Evans, Jr.*
Dale A. Evans, Jr.

333441046